UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANNE BEAUMONT,

                          Plaintiff,

v.                                                      1:04-CV-1084
                                                             (GHL)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS             PETER M. MARGOLIUS, ESQ.
*Counsel for Plaintiff*
7 Howard Street
Catskill, New York 12414

HON. GLENN T. SUDDABY                          WILLIAM H. PEASE, ESQ.
United States Attorney for the                       Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER[1]

**I.    BACKGROUND**

    **A.    Procedural History**

Anne Beaumont ("Plaintiff") filed an application for disability insurance benefits ("DIB") on June 13, 2000. (Administrative Transcript ("T") at 77-79.) The application was initially denied on August 8, 2000. (T. at 25-28.) Plaintiff requested a hearing before an Administrative

---

    [1]    This matter is before the Court by consent of both parties. (Dkt. No. 17.)

Law Judge ("ALJ") and one was held on April 24, 2001.  (T. at 324-349.)  On May 24, 2001, ALJ Carl E. Stephan issued a decision finding that Plaintiff was not disabled.  (T. at 46-52.)

Plaintiff appealed to the Appeals Council, and the Appeals Council remanded the matter for another hearing (T. at 61-64), which was held on March 31, 2003 (T. at 350-371).  ALJ Stephan issued a second unfavorable decision on April 14, 2003.  (T. at 17-22.)  This decision became the final decision of the Commissioner of Social Security ("Defendant") when the Appeals Council denied Plaintiff's request for review on July 16, 2004.  (T. at 4-8.)  Plaintiff commenced this action on September 17, 2004.  (Dkt. No. 1.)

### B. The Contentions

Plaintiff makes the following claims:

1. The ALJ failed to follow the directives of the Appeals Council, as set forth in their "Order of Appeals Council Remanding Case to Administrative Law Judge" (T. at 62-64.)   (Dkt. No. 6 at 3-5.[2])

2. The ALJ was biased and partial in his review of the evidence.  (Dkt. No. 6 at 5-10.)

3. The ALJ did not present a proper hypothetical to the vocational expert.  (Dkt. No. 6 at 10-11.)

4. The general rule that a claimant's failure to follow prescribed treatment bars disability is "overcome" and inapplicable.  (Dkt. No. 6 at 11-12.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus

---

[2] Plaintiff has paginated her brief, however, the pagination does not coincide with the actual sequential numbering of the pages.  The Court has renumbered the pages and all references will be to the sequential order of the pages.

should be affirmed. (Dkt. No. 10.)

## II.   APPLICABLE LAW

### A.   Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1) (2006)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. §§ 404.1520, 416.920 (2006). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he

3

> has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2006); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.    THE PLAINTIFF**

Plaintiff was born on July 2, 1955. (T. at 77.) She graduated from high school and obtained two Associate Degrees. (T. at 328.) Plaintiff previously worked as a typist and in a clerical capacity, performing tasks such as typing, filing, and opening and distributing mail. (T. at 101). Plaintiff alleges disability due to bipolar disorder. (Dkt. No. 6.)

**IV.    THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 30, 1989 (T. at 22); (2) Plaintiff's bipolar disorder was severe but did not meet or medically equal one of the impairments listed in Appendix 1 to Subpart P of Part 404 (T. at 21-22); (3) Plaintiff had the residual functional capacity ("RFC") to perform low stress work without constant interaction with others (T. at 22); and (4) Plaintiff retained the RFC to perform her past relevant work as a typist, and therefore was not disabled (T. at 22).

**V.    DISCUSSION**

   **A.    Whether the ALJ Failed to Follow the Directives of the Appeals Council**

Plaintiff argues that the ALJ failed to (1) recontact Dr. Gershberg for further clarification of his opinion regarding what Plaintiff could do despite her impairment prior to September 30, 1989; and (2) obtain evidence from a psychiatrist to clarify the nature and severity of Plaintiff's impairment and limitations prior to September 30, 1989. (T. at 63.)

   **1.    Recontacting Dr. Gershberg**

Plaintiff argues that the ALJ erred in failing to recontact Dr. Gershberg regarding his opinion that Plaintiff was "totally disabled from any work due to her psychological problems on or before 9/30/89." (T. at 148.) The ALJ reviewed Plaintiff's treatment records from 1971

6

onward and reasoned that Dr. Gershberg's opinion (that Plaintiff's was totally disabled prior to September 30, 1989) was not supported by the opinions of Dr. Jarett, who was Plaintiff's treating physician prior to September 30, 1989.  (T. at 20.)  Specifically, the ALJ found that Dr. Gershberg's opinion, rendered on October 3, 2000, was entitled to little weight as it pertained to Plaintiff's impairment prior to September 30, 1989 because, among other reasons, Plaintiff's treating physician at that time, Dr. Jarett, advised Plaintiff "to obtain employment as a means to improve her situation, meet other people and keep involved in normal daily activities, rather than just staying home."  (*Id.*)

Dr. Gershberg began treating Plaintiff in August of 1995, taking over Plaintiff's case upon Dr. Jarett's death.[3]  (T. at 361.)  On September 14, 2000, Plaintiff's counsel wrote to Dr. Gershberg asking him to "check the records of her treatment from 1971 and to comment on whether [he] believe[d] she was disabled on or before 9/30/89."[4]  (T. at 148.)  Dr. Gershberg presumably reviewed Plaintiff's records from 1971 onward and on the form provided by Plaintiff's counsel, placed a check-mark next to the statement that Plaintiff was totally disabled on or before September 30, 1989.  (T. at 148.)

After reviewing Dr. Jarett's records, this Court is of the opinion that it would have been appropriate to recontact Dr. Gershberg regarding his opinion that Plaintiff was disabled prior to

---

[3]   Dr. Jarett began treating Plaintiff in 1971.  (T. at 361.)

[4]   Plaintiff's counsel's letter also stated, "I have provided you with a list to check off and sign below if you wish." (*Id.*)  The list consisted of the following choices:
   ___   Anne Beaumont was totally disabled from any work due to her psychological problems on or before 9/30/89.
   ___   Other {please explain}: _____
(*Id.*) Dr. Gershberg checked off the first statement, signed the form, and dated it October 3, 2000. (*Id.*)

7

September 30, 1989.

There is no question that Dr. Jarett's notes reflect that Plaintiff had a mental impairment; his treatment notes from June, 1971 through September, 1975 reflect Plaintiff's symptoms.[5] Notwithstanding this impairment and its resulting symptoms, on September 3, 1986, Dr. Jarett opined that he thought that a steady permanent job should be Plaintiff's first priority and that it would be the first step before "anything else is decided."  (T. at 216.)  In February of 1987, he again stated that it was his impression that if Plaintiff could "get some type of work, out of the home and begin to[] [a]ssociate with others[,] . . . some progress might be made but until she can motivate herself to do this the situation will remain static."  (T. at 217.)

There is an apparent contradiction in the opinions of Plaintiff's two treating physicians.

---

[5]  Dr. Jarett noted that Plaintiff had "many deep seated [sic] emotional problems," "acted out her feelings and impulses," "considered her as being at least a minimal suicidal risk . . . but probably any attempts would be attention getting in nature," and noted that there was a depressive component in her personality that bore observation.  (T. at 203.)  In 1971, his tentative impression was that Plaintiff was an emotionally immature inadequate individual with many features of impulsivity.  (T. at 204.)  In November of 1975, Dr. Jarett noted Plaintiff's emotional lability, and "very flighty, childlike yet at the same time intense reaction to almost everything."  (T. at 207.)  One month later, his notes state that Plaintiff "feels detached from people and talks about herself and her brain as though it is 'split right down the middle' whereby one half of the brain really can't talk with the other half . . . one gets a picture of either a schizo-affective process or certainly an extreme hysterical like reaction."  (Id.)  In July of 1976, Dr. Jarett's diagnostic impression was schizoid personality and he rated Plaintiff's prognosis as guarded.  (T. at 208.)
  There are no treatment notes from September, 1975 through 1984.  On August 22, 1985, Dr. Jarett opined that Plaintiff may have a mild type of bipolar reaction.  (T. at 211.)  In September of 1985, Dr. Jarett wrote "[t]here is a suggestion that at times she may approach a borderline psychotic process or at least some lack of contact with reality . . . ."  (T. at 212.)  Dr. Jarett, and the social workers and therapists who saw Plaintiff, continued to note her emotional lability, simplistic thinking, rambling speech, anxiety, depression, child-like/little-girlish affect, and feelings of uncertainty and inadequacy.  (T. at 211-231.)  In 1986, Plaintiff was reassured as to the progress she had made and was on track to receive a degree in May of 1986.  (T. at 214.)  On June 25, 1986, Dr. Jarett noted that Plaintiff had been able to "hold a job and [was] functioning on a consistent basis."  (T. at 215.)

On one hand, her treating physician from 1971 through 1989, Dr. Jarett, opined that a steady job should be Plaintiff's first priority and could help Plaintiff make progress.  On the other hand, in 2000, her treating physician, Dr. Gershberg, reviewed Dr. Jarett's notes and opined that Plaintiff was totally disabled prior to 1989.  Because of this contradiction, it was incumbent on the ALJ to recontact Dr. Gershberg and clarify why he thought Plaintiff was totally disabled when Dr. Jarett thought that Plaintiff's first priority should be to seek employment.  The ALJ's decision not to recontact Dr. Gershberg is especially curious since Dr. Jarett noted that Plaintiff worked, albeit for short periods of time, during the time he treated her.  (T. at 215-216.)

The ALJ reasoned that Dr. Gershberg's statements "do not relate to the claimant's specific symptoms and abilities during the time period in question."  (T. at 20.)  The ALJ then went on to detail some of Plaintiff's symptoms and abilities, as documented by Dr. Jarett in his notes.  (*Id.*)  Specifically, the ALJ stated that "the claimant's ability to look for work clearly was not affected by her symptoms of anxiety or difficulty concentrating.  Therefore, the claimant's symptoms were not of the severity, intensity or duration to prevent the claimant from performing substantial gainful activity."  (*Id.*)  The ALJ concluded that because Dr. Gershberg's opinion is not supported by Dr. Jarett's treatment notes, Dr. Gershberg's opinion, as it pertains to Plaintiff's impairment prior to September 30, 1989, is entitled to little weight.  (*Id.*)

The ALJ clearly considered all of the medical evidence from 1971 through 2003.  However, what remains is the fact that, in the simplest terms, Dr. Jarett thought Plaintiff should and could work, and Dr. Gershberg thought Plaintiff could not.  The ALJ's rejection of Dr. Gershberg's opinion as not reflective of Dr. Jarett's opinions is a compelling reason for recontacting Dr. Gershberg.  In fact, the Appeals Council specifically remanded the matter,

9

among other reasons, because the additional psychological reports and psychiatric progress notes from the period of June 29, 1971 through April 1, 1988 had been submitted and many of these reports and notes had not been previously considered. (T. at 62.) In light of the fact that Dr. Gershberg reached a conclusion that appeared to be contrary to that of Plaintiff's treating physician from 1971 through 1988, the ALJ should have questioned Dr. Gershberg as to how and why he came to his conclusion. Furthermore, it is noteworthy that Dr. Gershberg's opinion consisted solely of checking a line next to a statement on a form prepared by Plaintiff's counsel. (T. at 148.) There was no explanation whatsoever by Dr. Gershberg regarding what records of Dr. Jarett's he relied upon to conclude that Plaintiff was totally disabled.

In addition, Dr. Jarett's opinion that Plaintiff could and should work was supported by evidence cited by the ALJ and Dr. Gershberg's conclusory opinion was not supported by any record evidence. In the absence of sufficient evidence, or in this case no evidence, the ALJ should have developed the record by recontacting Dr. Gershberg. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) and *Edmond v. Barnhart*, No. 04-CV-65e15, 2006 WL 2769922, at *11 (W.D.N.Y. Aug. 9, 2006). Furthermore, the ALJ, as a lay person, did not set forth any reasoning that was "overwhelmingly compelling" to "overcome" either of the medical opinions by Drs. Gershberg and Jarett. *Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856 (2d Cir. 1990) ("[A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.").

In addition, by stating that "the claimant's ability to look for work clearly was not affected by her symptoms of anxiety or difficulty concentrating . . . [and] the claimant's symptoms were not of the severity, intensity or duration to prevent the claimant from performing substantial

gainful activity," the ALJ "toes the line" of improperly substituting his opinion for that of a competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795 (2d Cir. 1983); *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (where the Second Circuit found that the ALJ erred in stating, without citing to any medical opinion, that "there is no atrophy of any muscle groups indicative of disuse for the purpose of avoiding discomfort [] as one would expect . . . based on the claimant's allegation of constant and totally disabling pain."); and *Wagner*, 906 F.2d at 862 (where the Second Circuit found that the ALJ had no sufficient basis to conclude that a treating physician's failure to report that the claimant suffered from headaches and left-side weakness precluded a diagnosis of hemiplegic migraine). The ALJ failed to provide any citations to evidence to support his position and, as a lay person, the ALJ was not in a position to know whether Plaintiff's symptoms affected her ability to look for work, nor was he in a position to know whether Plaintiff's symptoms were of the severity, intensity, or duration to prevent her from working.

For these reasons, remand is warranted.

### 2. Obtaining Evidence from a Medical Expert

Plaintiff next argues that the ALJ failed to obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairment through September 30, 1989. (Dkt. No. 6 at 4-5.) Plaintiff acknowledges that the ALJ sent Plaintiff's records to Aaron Satloff, M.D., a non-examining medical psychiatrist; however the ALJ gave Dr. Satloff's opinion little weight because it did not "specifically reflect his opinion regarding Dr. Jarett's findings prior to

11

September 1989."[6] (T. at 20.) Plaintiff argues that "[i]nstead of correcting this problem [that Dr. Satfloff 'apparently gave no opinion prior to the date last insured'] which the [ALJ] knew of pre hearing (as per claimant's counsel's objection to Dr. Satloff's opinion, Record, Page 304), the [ALJ] proceeded with the hearing without complying with the Appeals Council's direction number two." (Dkt. No. 6 at 5.)

The Appeals Council directed the ALJ, upon remand, to: "Obtain evidence from a medical expert (psychiatrist) to clarify the nature and severity of the claimant's impairment and associated limitations through September 30, 1989 . . . ." (T. at 63.) The ALJ attempted to obtain this evidence by asking for Dr. Satloff's professional opinion and the ALJ specifically asked Dr. Satloff to give his opinion as to whether the "claimant met a listing on or before September 1989." (T. at 279.) Dr. Satloff rendered his opinion and based it upon the notes of Dr. Gershberg and Ms. Erika Johnson, a psychiatric social worker.

It is noteworthy that Plaintiff's argument relies solely on her claim that she objected and notified the ALJ of the "problem." Because no such objection or notice appears in the page cited by Plaintiff, her argument fails on this ground. However, as the Court has ordered remand for the reasons stated above, on remand the ALJ shall obtain evidence from a medical expert to clarify

---

[6] In her brief, Plaintiff states that the ALJ should have been aware of the fact that Dr. Satloff did not render any opinion prior to September 30, 1989 because counsel for Plaintiff raised this issue to the ALJ. (Dkt. No. 6 at 5.) As evidence of this, Plaintiff cites to page 304 of the record. Page 304 of the record is a fax cover sheet which contains the message: "Dear Judge Stephen: Please be advised that we object to the report of Dr. Satloff regarding Anne Beaumont as per the attached letter dated 1/22/03 from Jack M. Gershberg, M.D. of Columbia County Mental Health Center." Neither this fax cover sheet, nor the letter from Dr. Gershberg, raise the issue that Dr. Satloff's opinion did not pertain to the time period prior to September of 1989. (T. at 304-305.) Dr. Gershberg did indeed object to Dr. Satloff's opinion, but not on the basis that it did not relate to the time period prior to September, 1989.

the nature and severity of Plaintiff's impairment and associated limitations through September 30, 1989 and specifically tell the medical expert to cite to specific medical record evidence, by date and author, to support his/her opinion regarding Plaintiff's impairment.

### B. Whether the ALJ Was Biased and Partial in His Review of the Evidence

Plaintiff's second argument is that the ALJ picked and chose evidence and "did everything he could to find contradictions to Dr. Gershberg's opinion" and that if the medical records were given "a fair and impartial reading," the ALJ would have come to the conclusion, as Dr. Gershberg did, that Plaintiff was totally disabled prior to September 20, 1989.[7] (Dkt. No. 6 at 5-10.)

Defendant's response brief has interpreted Plaintiff's argument to be one challenging the ALJ's determination regarding Plaintiff's credibility. (Dkt. No. 10 at 12-15.) Plaintiff's brief on this point is, at best, unclear, however the Court does not believe that Plaintiff has raised an argument regarding her credibility. Rather, without citing to any authority to support her contention, Plaintiff argues that the ALJ engaged in a "picking and choosing" and "one from Column A and one from column B marshalling [sic]") style review of the evidence, suggesting bias and partiality. (*Id.*) Implicit in Plaintiff's argument is the contention that the ALJ ignored the evidence that was more favorable to Plaintiff. (Dkt. No. 6 at 5 ("If the [ALJ] had fairly

---

[7] It is notable that Plaintiff's argument on this point, which spans five pages of her brief, does not contain one single citation to a case to support her argument. This is not in compliance with General Order No. 18 of this District, which provides that Plaintiff's brief shall contain an argument, "divided into sections separately treating each issue and must set forth the contentions of plaintiff with respect to the issues presented and reasons therefor. Each contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations, and cases supporting plaintiff's position." United States District Court for the Northern District of New York General Order No. 18 at 2.

weighed all the evidence, he would have seen that the totality of the way [Plaintiff] lived her life supports Dr. Gershberg's opinion.".)

Although Plaintiff's argument is unsupported by legal authority and not a model of clarity, given the fact that, as stated above, Dr. Gershberg's opinion that Plaintiff was totally disabled prior to September 30, 1989 is wholly unsupported and completely contradicts Dr. Jarett's opinions, as supported by his treatment records, the Court cannot "glean the rationale" of the ALJ's decision from the evidence of record. *Lewis v. Comm'r of Soc. Sec. Admin.*, No. 6:00 CV 1225 GLS, 2005 WL 1899399, at *6 (N.D.N.Y. Aug. 2, 2005) (Sharpe, J.) (citations omitted). While the ALJ was not required to "mention or discuss every single piece of evidence in the record," *Id.*; *see also Roy v. Massanari*, No. Civ.3:01CV306(PCD), 2002 WL 32502101, at * 3 (D. Conn. June 12, 2002), remand is warranted because the ALJ should have explained how he came to his conclusion without recontacting Dr. Gershberg, in light of Dr. Jarett's opinions.

## C.     Whether the ALJ Presented a Proper Hypothetical to the Vocational Expert

Again, without any citations to legal authority, Plaintiff's third argument is that the ALJ ignored portions of the vocational expert's testimony and did not present a proper hypothetical to the vocational expert. (Dkt. No. 6 at 10-11.) Specifically, Plaintiff argues that: (1) the ALJ ignored the vocational expert's responses at the March 31, 2003 hearing to the ALJ's second hypothetical and to Plaintiff's counsel's hypothetical; and (2) the ALJ "left out [of the hypotheticals] the opinion of Dr. Jarett who treated claimant prior to her date last insured and who the [ALJ] relies so heavily on elsewhere in the decision"[8] (Dkt. No. 6 at 11).

---

[8]     Plaintiff cites to the ALJ's decision where he stated that "[t]he claimant reported to Dr. Jarett that she did not go out of the house and was isolating herself." (Dkt. No. 6 at 11, citing T. at 21.) Plaintiff argues that the ALJ should have included this information in his hypothetical

In determining whether a claimant's work skills can be used in other work, an ALJ may utilize the services of a vocational expert. 20 C.F.R. § 404.1566(e) (2006). A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988) and *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence,[9] a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) and *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based [her] opinion." *Dumas*, 712 F.2d at 1554.

Because remand has been ordered as discussed above, it would follow that remand on this issue is necessary since the question of whether a hypothetical is proper or not depends on the accurate presentation of Plaintiff's impairments. As discussed above, remand is being ordered for clarification regarding Dr. Gershberg's opinion, which was supposedly based upon a review of Dr. Jarett's records, because the two treating physicians came to completely opposite conclusions and there is no explanation from Dr. Gershberg as to how he came to his conclusion. Upon remand, after obtaining clarification from Dr. Gershberg, it is presumed that based upon an evaluation of the medical evidence, the ALJ will determine if further testimony from a vocational

---

questions posed to Dr. Liberty. (Dkt. No. 6 at 11.)

[9] *Dumas*, 712 F.2d at 1554 n.4.

expert is necessary. It is also presumed that if further testimony from a vocational expert is necessary, the ALJ will present hypothetical(s) which accurately portray Plaintiff's impairment and its resulting limitation(s).

### D. Whether the General Rule That a Claimant's Failure to Follow Prescribed Treatment Bars Disability Is Applicable

Finally, Plaintiff argues that the general rule that the failure to follow prescribed treatment bars disability is "overcome" and does not apply. (Dkt. No. 6 at 11-12.) Although Plaintiff provided no authority for the "general rule," the Court presumes that Plaintiff is referring to 20 C.F.R. § 404.1530, entitled "Need to follow prescribed treatment" and Social Security Ruling ("SSR") 82-59, entitled "Failure to follow prescribed treatment."

Plaintiff's argument fails because the ALJ did not make a specific finding regarding Plaintiff's failure to follow prescribed treatment. The reason the ALJ did not make such a specific finding is evident from SSR 82-59. "In that ruling, the Commissioner permits a finding on this issue only if all four of the listed conditions in the ruling are met." *Aguido-Martinez v. Barnhart*, 413 F. Supp. 2d 199, 213 (W.D.N.Y. 2006). One of these conditions is "[t]he evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity . . . ." SSR 82-59. In his decision, the ALJ found that Plaintiff's impairment did not prevent her from performing her past relevant work, thus the ALJ could not have made a finding that Plaintiff failed to follow prescribed treatment. *Id.* (citing *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) and *Lozado v. Barnhart*, 331 F. Supp. 2d 325, 340 (E.D. Pa. 2004)).

However, remand has been ordered as set forth above and if, upon remand, the four conditions listed in SSR 82-59 are met, and the ALJ makes a specific finding in this regard, it is

presumed that the ALJ will have ascertained any acceptable reasons for failure to follow the prescribed treatment and considered those along with all the relevant evidence.

**WHEREFORE,** it is hereby

**ORDERED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[10] for further proceedings consistent with the above.

Dated: September 22, 2007
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[10] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).